UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

BERNARD HARDRICK,

        Plaintiff,

Case No. 2:23-cv-248

v.

Honorable Paul L. Maloney

JEREMY COPPLER,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim, Plaintiff's claim against Defendant Coppler for violation of Plaintiff's First Amendment rights relating to legal mail. Plaintiff's First Amendment retaliation claim against Defendant Coppler remains in the case.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Jeremy Coppler, the AMF property room manager.

Plaintiff alleges that he was transferred from the Marquette Branch Prison to AMF during May of 2022.[1] Plaintiff transferred into a segregation unit. Because personal property is limited in segregation, when Plaintiff's property arrived, it had to be held and searched by the property room staff. Plaintiff reports that Defendant Coppler "shuffled through" Plaintiff's belongings and decided what property Plaintiff could keep and what property he was not allowed to have in segregation.

Plaintiff notes that MDOC policy requires that he receive his legal materials—for Plaintiff, three full duffle bags—within 48 hours. Defendant held Plaintiff's allowable property for six days. By the fourth day, Plaintiff filed a grievance against Defendant Coppler for the delay.

When Plaintiff received his legal material, it arrived with a "Notice of Intent" form from Defendant Coppler indicating Coppler's intention to confiscate and destroy Plaintiff's headphones, shower shoes, adapter, and metered envelopes. At the same time, Plaintiff received a "Property Receipt," which purportedly listed all of the remaining property that was to be held in the property room pending Plaintiff's release from segregation. Plaintiff noticed several items missing from

---

[1] Plaintiff's factual allegations are set forth in paragraphs 6 through 29 of his complaint. (Compl., ECF No. 1, PageID.2–5.)

2

that receipt: a television, a typewriter, Reebok Shoes, a footlocker, a Casio watch, a religious gold chain and pendent, a beard trimmer, a G.E. radio, and personal V-neck T-shirts.

On June 2, 2022, Prison Counselor Lanctot—not a party—conducted a hearing on the Notice of Intent. Plaintiff claims that Lanctot informed Plaintiff that Coppler received notice of the grievance that Plaintiff had filed against Coppler before Coppler confiscated Plaintiff's property by failing to include it on the "Property Receipt." Plaintiff indicates that Lanctot informed Plaintiff that Lanctot did not agree with Coppler's conduct, but Lanctot upheld the Notice of Intent that recommended disposal of Plaintiff's personal property, specifically Plaintiff's headphones, shower shoes, adapter, and metered envelopes.

Plaintiff indicates that he was able to discuss the matter with Coppler at a later time. Plaintiff states that he questioned Coppler about disposing of property that Plaintiff was entitled to possess. Coppler responded: "We do thing differently here at Baraga, especially when it comes to those who like to file grievances." (Compl., ECF No. 1, PageID.3.) Plaintiff also asked why Coppler had failed to record several items of property on the "Property Receipt." Coppler responded: "That grievance made them disappear." (*Id.*)

Once Plaintiff was released from segregation, the "Administration" required Plaintiff to send certain items of personal property—a flannel jacket, a gold religious chain, 4 pairs of glasses, and one adult magazine—out of the prison. (*Id.*, PageID.4.) Plaintiff opted to send them home. They were returned as undeliverable.

Defendant Coppler never sent a "Notice of Intent" to dispose of the property. Instead, Plaintiff received a "Notice of Mail Rejection" almost two months later. Prison Counselor Stromer—not a party—asked Plaintiff how he wanted to dispose of the property. Plaintiff advised Stromer to have the property sent to Assistant Attorney General Keith Clark for "litigative

3

purposes." (*Id.*) Plaintiff states that he had an upcoming scheduled mediation hearing with Mr. Clark. Stromer proceeded accordingly, but the items were never mailed to Clark. Instead, Coppler contacted Clark to see if Clark would accept the property. Clark indicated he would not accept the property. Plaintiff grieved the failure to send the property as interference with Plaintiff's "legal mail."

Plaintiff later questioned Coppler about the property. Coppler informed Plaintiff that he would not be given another opportunity to choose how to dispose of the property; instead, the property would be confiscated.

Based on these facts, Plaintiff identifies two legal claims. (*Id.*, PageID.6, ¶ 37.) First, Plaintiff contends that Coppler's confiscation of property that Plaintiff was allowed to have was an adverse action against Plaintiff taken in retaliation for Plaintiff's filing of a grievance against Coppler for the delay in providing Plaintiff with his legal material. Second, Plaintiff claims that Coppler's refusal to mail the Plaintiff's rejected property to Keith Clark is a violation of Plaintiff's First Amendment right to send out legal mail.

Plaintiff seeks compensatory, punitive, and nominal damages in the total amount of $105,000.00.

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

4

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges each of the three elements. He reports that he filed a grievance against Defendant Coppler four days after he arrived at AMF. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). There is nothing in Plaintiff's allegations that suggest that his grievance was frivolous.

Plaintiff also alleges "adverse action." He claims that Coppler essentially took and disposed of Plaintiff's property, Plaintiff's headphones, shower shoes, adapter, and metered envelopes by way of the "Notice of Intent" and the television, the typewriter, the shoes, the footlocker, the watch, the gold chain and pendent, the beard trimmer, the radio, and the personal V-neck T-shirts by way of not reflecting them on Plaintiff's property receipt. The confiscation of property could be the sort of adverse consequence that might deter a person of ordinary firmness from engaging in protected conduct. *See, e.g.*, *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (citing several cases holding that the confiscation of personal property was an adverse action for purposes of a First Amendment retaliation claim).

Plaintiff has also sufficiently alleged Defendant Coppler's retaliatory motive. Plaintiff alleges that counselor Lanctot made the unusual confession that Defendant Coppler had received Plaintiff's grievance before he confiscated Plaintiff's property and that the receipt of the grievance was why Coppler had confiscated Plaintiff's property. Coppler also conveniently advised Plaintiff that the grievance was why Plaintiff lost his property. Therefore, at this stage of the proceedings,

6

the Court concludes that Plaintiff has stated a claim against Defendant Coppler for retaliation in violation of Plaintiff's First Amendment rights.

### B. "Legal" Mail

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see Turner v. Safley*, 482 U.S. 78 (1987).

"Legal" mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003). "[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Sixth Circuit Court of Appeals has looked to the definition in the Michigan Administrative Code when considering whether mail sent to or from a prisoner incarcerated with the MDOC is "legal mail." *See, e.g.*, *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (noting that the "Michigan Administrative Code defines 'legal mail' as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, the department of correction's central office staff, and staff of the institution in which the prisoner is incarcerated. *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008)."); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (looking to the Michigan Administrative Code for the definition of "legal mail" in Michigan). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as]

7

the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020), *aff'd*, No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. June 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials,'" and "while the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'" (citation omitted)).

In Plaintiff's case, his desire to send the rejected property to opposing counsel does not make that personal property "correspondence." The dictionary definition[2] of "correspondence" does not include Plaintiff's contraband property—a flannel jacket, a gold religious chain, 4 pairs of glasses, and one adult magazine—even if that property is mailed. Correspondence is defined as "[i]ntercourse or communication by letters," Correspondence Definition, Oxford English Dictionary, https://www.oed.com/dictionary/correspondence_n?tab=meaning_and_use#8206987 (last visited Feb. 9, 2024), or "[c]ommunication by exchanging letter, emails, or other messages," Correspondence Definition, Oxford Dictionaries, https://premium.oxforddictionaries.com/us/definition/american_english/correspondence (last visited Feb. 9, 2024), or "communication by letters or email also: the letters or e-mails exchanged," Correspondence Definition, Merriam–Webster, http://www.merriam-webster.com/dictionary/correspondence (last visited Feb. 9, 2024). Plaintiff's contraband property is not the sort of written communication included within the ordinary meaning of "correspondence." Moreover, MDOC policy regarding contraband property forbids Plaintiff from sending such property to "an identified public official." MDOC Policy Directive 04.07.112, Prisoner Personal Property ¶ MM (eff. Oct. 2, 2023).

---

[2] "[D]ictionary definitions are often the starting point for our textual interpretations." *United States v. Wilkes*, 78 F.4th 272, 281 (6th Cir. 2023).

For all of these reasons, the Court concludes that Plaintiff has failed to state a claim against Defendant Coppler for interference with Plaintiff's legal mail.

## Conclusion

As set forth above, the Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court will dismiss, for failure to state a claim, Plaintiff's claim that Defendant Coppler interfered with Plaintiff's legal mail. Plaintiff's First Amendment retaliation claim against Defendant Coppler remains in the case.

An order consistent with this opinion will be entered.

Dated:   March 29, 2024               /s/ Paul L. Maloney
                                      Paul L. Maloney
                                      United States District Judge